UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

**ANTOINETTE P.,**

**Plaintiff,**

    v.

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant**.

Case No. 1:20-cv-001675-TPK

OPINION AND ORDER

## OPINION AND ORDER

    Plaintiff filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security. That final decision, issued by the Appeals Council on September 28, 2020, denied Plaintiff's applications for disability insurance benefits and supplemental security income. Plaintiff has now moved for judgment on the pleadings (Doc. 11), and the Commissioner has filed a similar motion (Doc. 12). For the following reasons, the Court will **DENY** Plaintiff's motion for judgment on the pleadings, **GRANT** the Commissioner's motion, and **DIRECT** the Clerk to enter judgment in favor of the defendant Commissioner.

### I.  BACKGROUND

    On May 22, 2018, Plaintiff protectively filed her applications for benefits, alleging that she became disabled on August 27, 2016. After initial administrative denials of her claim, Plaintiff appeared at an administrative hearing held on January 6, 2020. Both Plaintiff and a vocational expert, Dale Pasculli, testified at that hearing.

    The Administrative Law Judge issued an unfavorable decision on January 31, 2020. He first concluded that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2019, and that she had not engaged in substantial gainful activity since her alleged onset date. Next, he found that Plaintiff suffered from severe impairments including tendinopathy of the left shoulder, obesity, a major depressive disorder, an anxiety disorder, a bipolar disorder, and a substance use disorder. He further determined that these impairments, viewed singly or in combination, were not of the severity necessary to qualify for disability under the Listing of Impairments.

    Moving on to the next step of the inquiry, the ALJ found that Plaintiff had the residual functional capacity to perform work at the light exertional level but that she needed to work at a low stress job which involved the performance of only simple, routine, and repetitive tasks, the

making of only simple work-related decisions, and only few, if any workplace changes. Also, she could tolerate only occasional interaction with supervisors, coworkers, and the general public.

Next, the ALJ determined that Plaintiff could not perform her past relevant work as a cashier/checker. With her limitations, however, he found that she could perform light jobs like cleaner-housekeeping, routing clerk, and photocopying machine operator, and that these jobs existed in significant numbers in the national economy. The ALJ therefore concluded that Plaintiff was not under a disability as defined in the Social Security Act.

Plaintiff, in her motion for judgment, raises four issues. She argues: (1) that the ALJ erred by failing to consider the May 1, 2019 opinion of her treating psychiatrist, Dr. Rajendran; (2) that the ALJ erred by failing to account for limitations caused by her shoulder tendinopathy; (3) that the ALJ's finding that she could do simple, routine work was not supported by substantial evidence; and (4) that the ALJ erred by finding that her impairment relating to a lipoma excision was not severe.

## II.  THE KEY EVIDENCE

The Court will begin its review of the evidence by summarizing the testimony from the administrative hearing. It will then provide a summary of the most important medical records.

### A.  The Hearing Testimony

Plaintiff, who was 31 years old as of the date of the hearing, first testified that she worked as a cashier at a convenience store from 2014 to 2016. She did some part-time work in 2017 and 2018, including working as a school bus aide.

When asked about her impairments, Plaintiff said that she had a hereditary shoulder condition which included torn ligaments in her left shoulder. She could not lift anything over five pounds, and driving was painful so she stopped doing it. She had recently had surgery to treat obesity in order to improve her overall health and mobility. Additionally, she suffered from anxiety which made it hard to be around people, and she experienced mood swings due to bipolar disorder. Plaintiff said she did not socialize. She had had problems with substance abuse in the past.

Plaintiff said that she spent her days taking care of her personal needs, reading, and watching television. Her father helped her with household chores. She ran errands with either her father or her significant other, and she napped because her medication made her drowsy. Her mood swings were unpredictable and she had difficulty concentrating. Additionally, she had trouble focusing and remembering things. Plaintiff also said that she had had three surgeries for a lipoma on her spine and that her left leg was now numb due to problems with the last surgery. That problem affected her mobility. She also was limited in her ability to sit, stand, and walk.

The vocational expert, Ms. Pasculli, testified that Plaintiff's past work was done at the light exertional level. She was then asked questions about a person with Plaintiff's vocational profile who could work at that level but do only low-stress jobs and interact with others only occasionally. In response, she identified several jobs that such a person could do, including cleaner-housekeeper, routing clerk, and photocopy machine operator. She further testified that such a person could also do various sedentary jobs, but that no jobs would be available to someone who would be off task for 15% of the time. The same would be true for someone who could only occasionally reach with either arm or who had to work in total isolation.

### B. The Relevant Treatment Records

In 2015, Plaintiff sought treatment for back pain and for removal of a lipoma. She continued to have pain after it was surgically removed, and she also reported constant headaches. A second surgery was done in November of 2015 and a third in 2016. After the third surgery, Plaintiff continued to experience left leg numbness. She had bariatric surgery in 2019 to address her obesity.

At an initial mental health assessment done in 2015, Plaintiff reported emotional instability including anger issues and problems with socialization. She had previously been seeing a counselor and taking medication. Her diagnoses included opioid dependence, generalized anxiety disorder, and rule out bipolar disorder. She was working at that time. She began seeing a counselor twice per month but canceled sessions with enough frequency that she was discharged from treatment in September of that year.

Plaintiff again sought mental health treatment in 2018, reporting symptoms similar to those she experienced in 2015. However, she missed her intake appointment and was discharged from treatment in April of that year. Later in the year, however, she saw a psychiatrist, Dr. Rajendran, who diagnosed her with depressive and anxiety disorders and noted that she had marked depression with crying spells. She also seemed extremely anxious, nervous, and tense, and she reported panic attacks. Dr. Rajendran prescribed various medications to treat her symptoms and they did improve her functioning. By October, she had shown "marked improvement" but still required further stabilization. A note from January, 2019, indicated that she was still hyperverbal but getting better, but the next month she was anxious and argumentative. Additional notes indicate that Dr. Rajendran was continuing to make adjustments to Plaintiff's medication to address her bipolar disorder and that her mood and affect had improved, By May of 2019 she was doing "a lot better with the medication at this point." However, she understood she was not at the point where she could return to work full-time.

### C. Expert Opinions

Dr. Fabiano, a psychologist, performed a psychiatric evaluation of Plaintiff October 1, 2018. She told Dr. Fabiano that she left her last job as a bus aide due to panic attacks. Her symptoms included difficulty sleeping and loss of appetite. She also reported depression but said that her medication was helping with that problem. Plaintiff was taking methadone on a

daily basis to treat her substance abuse disorder.  Dr. Fabiano noted that Plaintiff was "tangential at times" during her examination but her thought processes were coherent and goal-directed.  Her attention and concentration were grossly intact and her memory was mildly impaired.  Dr. Fabiano concluded that Plaintiff was mildly impaired in her ability to deal with simple directions and instructions and moderately impaired in dealing with complex instructions, relating to others, sustaining concentration, performing at a consistent pace, and regulating and controlling her behavior.  However, he thought that she could sustain and ordinary and routine attendance at work and function on a daily basis.  (Tr. 602-07).

On the same day, Plaintiff saw Dr. Litchmore for an internal medicine examination.  Her chief complaints to him were anxiety and depression, but she also had a history of a dislocatable left shoulder.  Plaintiff reported that she could cook, clean, do laundry, and care for her personal needs.  Her physical examination was essentially normal.  Dr. Litchmore diagnosed obesity, anxiety and depression, opiate abuse, and a history of dislocatable left shoulder.  He thought she had limitations in her ability to lift and carry heavy objects.  (Tr. 609-12).

The evidence was also reviewed by two state agency consultants.  Dr. Poss did not believe that Plaintiff had any severe physical impairments (a conclusion the ALJ found unpersuasive).  Dr. Hoffman, a psychologist, determined that Plaintiff had moderate limitations in her ability to understand and remember detailed instructions, to maintain attention and concentration for extended periods, to perform within a schedule, to maintain regular attendance, and be punctual, to complete a workday or work week without interruption from psychologically-based symptoms, to respond appropriately to supervisors, to respond to changes in the work setting, and to set realistic goals or to make plans independently of others.  (Tr. 101-03).

### III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even

more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012)

### IV. DISCUSSION

#### A. Treating Psychiatrist's Opinion

Plaintiff's first claim of error relates to a statement made by Dr. Rajendran in May, 2019, which Plaintiff characterizes as an opinion that she was not capable of returning to full-time work at that time.  Citing to regulations which require the Commissioner to consider every expert opinion in the record, she notes that the ALJ never discussed this particular piece of evidence, nor did he indicate how much weight, if any, he assigned to it.  In response, the Commissioner argues that, to the extent that this statement may be considered to be an opinion, it was not a medical opinion but a vocational one and made with respect to an issue which is to be determined by the Commissioner and not by treating or examining sources.  The Commissioner asserts that, under the applicable regulations, this statement has no evidentiary value, and that the ALJ did not err by not separately discussing it in his review of the records from Dr. Rajendran.

It is important, first of all, to look closely at the statement in question.  As the Court has noted in its review of the medical evidence, at an office visit on May 1, 2019, where Plaintiff's primary issue was her strained relationship with her father, Dr. Rajendran noted that her attitude was cooperative and her memory was intact.  She seemed to be doing "a lot better with the medication" and '"[h]er mood was a lot better."  His comment about whether she could work was phrased in this way: "She understands that she cannot return to a full-time job at this point." He further noted that she was going to try to work at a part-time job and, if that were successful, then to pursue full-time employment.  (Tr. 712).  By May 31, 2019, she was working part-time, and that continued throughout his treatment of her.  The ALJ summarized Dr. Rajendran's treatment notes (Tr. 21-22) but did not specifically refer to the May 1, 2019 statement or analyze it as a medical opinion.

As the Commissioner correctly points out, 20 C.F.R. §1520b(c) provides that "[s]tatements that [a claimant] is not disabled..., able to work, or able to perform regular or continuing work" are "inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled" and the Commissioner will therefore not provide an analysis of how such statements were considered.  *See also Michael H. v. Comm'r of Social Security*, 2022 WL

768658, *6 (W.D.N.Y. Mar. 14, 2022).  It is not clear that the statement in question actually represented Dr. Rajendran's opinion about Plaintiff's employability, as opposed to her own belief about what she was capable of doing at the time.  Even if it were the former, however, the Commissioner is correct that this type of statement - which does not include any opinion about Plaintiff's specific mental limitations - is not one which is required to be analyzed.  It also does not carry any evidentiary weight.  Consequently, the ALJ did not err by failing to acknowledge the statement as a treating source opinion or to analyze it as if it were a medical opinion.

### B.  Left Shoulder Tendinitis

In her second claim of error, Plaintiff notes that the ALJ found her left shoulder tendinitis to be a severe impairment.  However, she contends that the residual functional capacity determination did not include any functional limitations which stemmed from that severe impairment.  She therefore concludes that the ALJ made a lay determination that her tendinitis did not impair her ability to work, disregarding the only medical evidence - the opinion of the consultative examiner, Dr. Litchmore - that the condition imposed functional limitations, particularly in lifting and carrying heavy objects.  The Commissioner responds that there was no evidence that Plaintiff regularly sought treatment for this condition and notes that she worked regularly despite having the condition, indicating that it did not prevent her from performing the demands of light work.  The Commissioner also notes that Dr. Litchmore's opinion was taken into account (the ALJ said that he considered it to be persuasive) because rather than conclude that Plaintiff could lift and carry heavy objects, the ALJ limited her to light work, which does not require lifting and carrying more than 20 pounds.

The Commissioner has the better of this argument as well.  It does not appear that the ALJ made a lay judgment about the extent of Plaintiff's physical limitations; in fact, he found Dr. Litchmore's opinion to be persuasive, noted the limitation in lifting and carrying heavy objects, and said that this limitation was "factored into the claimant's residual functional capacity."  (Tr. 24).  The fact that Plaintiff was able to work part-time in a light job during her alleged period of disability is also evidence that she was able at least to perform the physical demands of such work, and she has pointed to no evidence in the record suggesting that she is more limited than the ALJ found her to be.  For these reasons, the Court finds no merit in Plaintiff's second claim of error.

### C.  RFC for Simple Work

Next, Plaintiff takes issue with the ALJ's conclusion that she was capable of performing low stress jobs defined as work involving only simple, repetitive tasks.  She argues that this conclusion is not, as the ALJ reasoned, supported by the opinion rendered by Dr. Fabiano, the consultative examiner, but actually contrary to that opinion.  She also asserts that the treatment notes from Dr. Rajendran support further limitations, particularly in the areas of insight and judgment, and that the ALJ's conclusion therefore lacks substantial support in the record.  The Commissioner argues, in response, that the mild limitations reflected in Dr. Fabiano's report are consistent with the residual functional capacity finding, and that the finding is further supported

by the opinion of Dr. Hoffman, the state agency consultant, and the evidence that Plaintiff was able to pursue part-time employment during the relevant period and was consistently improving with medication and treatment.

The ALJ found both Dr. Fabiano's and Dr. Hoffman's analyses to be persuasive. He indicated that Dr. Fabiano's conclusions were "factored into the claimant's residual functional capacity" as were Dr. Hoffman's. (Tr. 24). However, the ALJ specifically found that the mental residual capacity finding which he made was based on "the totality of the psychiatric evidence," *i.e.* the treatment records, in addition to the two persuasive opinions. The question is whether the finding made by the ALJ is supported by the record as a whole.

As the Commissioner correctly points out, an RFC finding need not mirror any particular expert opinion or other item of evidence so long as the finding is supported by substantial evidence on the record. *See, e.g., Riley v. Comm'r of Social Security*, 2019 WL 5287957, *4 (W.D.N.Y. Oct. 17, 2019). Dr. Fabiano found that Plaintiff was only mildly limited in her ability to deal with simple directions and instructions, which, as the Commissioner notes, is consistent with a less-than-severe impairment. Dr. Fabiano found moderate limitations in her ability to relate to others and to sustain concentration, and the ALJ concluded that Plaintiff had functional restrictions in this area which limited her to simple, low stress work. Dr. Hoffman, who had the benefit of reviewing Dr. Fabiano's report, essentially adopted the findings contained there, and the ALJ's residual functional capacity finding closely tracks Dr. Hoffman's conclusions. There is also, as the Commissioner argues, evidence that Plaintiff could perform the mental demands of part-time work and that once she began seeing Dr. Rajendran her mental condition improved. All of this evidence supports a finding that she was no more limited than found by the ALJ. Consequently, her third claim of error is insufficient to support a remand.

### D.  Lipoma as a Severe Impairment

As the Court's summary of the medical evidence shows, Plaintiff developed a lipoma on her spine which led to three surgeries and, ultimately, some residual numbness in her legs. The ALJ found that this impairment was not severe because it did not meet the twelve-month durational requirement of the Social Security Act. In her final claim of error, Plaintiff takes issue with this finding, arguing that the medical evidence showed that the symptoms from her last surgery would take up to eighteen months to resolve. The Commissioner, in turn, argues that the record shows no treatment for this condition after October of 2016, which is only two months after Plaintiff claimed her disability began, and that no limitations from the lipoma were observed at Dr. Litchmore's consultative examination in 2018. The Commissioner asserts that even if this impairment were severe, any functional limitations it caused were accounted for in the ALJ's residual functional capacity finding.

The Court finds no merit in Plaintiff's final argument. There is simply no evidence to support the claim than any functional limitations arising from Plaintiff's lipoma were so severe as to preclude her from performing light work, and she was doing light work on a part-time basis in 2019. It is by no means apparent that any was error committed by the ALJ here, given that the

medical evidence supports only a finding that it was "likely" that residuals from the third surgery could last up to 18 months, but not that they actually persisted that long. But even if an error occurred, it was harmless. *See, e.g., Casselbury v. Colvin*, 90 F. Supp. 3d 81, 94 (W.D.N.Y. 2015) ("[w]here an ALJ fails to include a condition as a severe impairment, such failure is harmless if the ALJ proceeded through the sequential analysis taking the plaintiff's complaints of pain into account when making his RFC determination."). There is therefore no basis for reversing the Commissioner's decision here.

## V. CONCLUSION AND ORDER

For the reasons set forth in this Opinion and Order, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Doc. 11), **GRANTS** the Commissioner's motion (Doc. 12), and **DIRECTS** the Clerk to enter judgment in favor of the defendant Commissioner.

/s/ **Terence P. Kemp**
**United States Magistrate Judge**